**WATERFRONT COMMISSION OF NEW YORK HARBOR, on behalf of itself and the State of New Jersey, Plaintiff,**

v.

**ELIZABETH–NEWARK SHIPPING, INC., Defendant.**

No. Civ.A. 96–3662 WHW.

United States District Court,
D. New Jersey.

April 24, 1998.

Gerald P. Lally, General Counsel, David B. Greenfield, Assistant General Counsel, Waterfront Commission of New York 'Harbor, Port Newark, NJ, for plaintiff.

Scott R. Johnston, Poles, Tublin, Patestides & Stratakis, New York City, for defendant.

## OPINION

WALLS, District Judge.

This matter comes before the Court upon a motion for summary judgment by plaintiff Waterfront Commission of New York. Pursuant to Rule 78 of the Federal Rules of Civil Procedure, the Court considers this motion without oral argument. For the reasons that follow, plaintiff's motion is granted.

### Background

The material facts of this case are not in dispute. Plaintiff Waterfront Commission of New York Harbor ("Commission") is a bi-state instrumentality of New Jersey and New York established pursuant to the Waterfront and Airport Commission Act, N.J.S.A. § 32:23–1 *et seq.* ("Act" or "Compact"), to carry out the mandate of that compact. Defendant Elizabeth–Newark Shipping, Inc. ("ENS") is a New Jersey corporation that has been shipping automobiles and light trucks—to which it has held title [1]—to Haiti, for later sale in that country. Plaintiff contends, and defendant does not deny, that on at least two occasions, ENS employed unlicensed pier superintendents and hiring agents as well as workers who were not included in the longshoremen's register to load those vehicles onto its ships. Plaintiff contends that the use of such unlicensed labor is a direct violation of the Act, and seeks (1) to permanently enjoin defendant from engaging in such activity in the future, (2) to recover assessments, interest, and monetary penalties for the alleged violation, and (3) an award of costs and disbursements. Defendant maintains that because it holds title to the freight handled by these unlicensed workers, its activities fall beyond the scope of the Act.

### Legal Standard

Summary judgment is appropriate where the moving party establishes that there is no genuine issue of material fact and that it is "entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). At the summary judgment stage, the court's function is not to weigh the evidence and determine the truth of the matter, but rather it is to determine whether there is a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). In the motion at bar, the parties do not dispute any material facts.

1. In fact, plaintiff charges that ENS did not hold title to all of the automobiles and trucks it shipped. ENS disputes this allegation, but, as discussed *infra,* this dispute is not material.

## *Analysis*

### *I. Application of the Act*

The Waterfront Commission was formed to combat corrupt labor conditions within the Port of New York District. N.J.S.A. 32:23–1[2]. The Compact establishes a system under which waterfront labor is regulated and, of relevance to this matter, mandates (1) that no person be employed as a longshoreman unless listed in the "longshoremen's register" established by the statute, N.J.S.A. 32:23–27, and (2) that no unlicensed person be employed as a pier superintendent or hiring agent. N.J.S.A. 32:23–12.

The parties have collectively submitted 57 pages of briefs in which they wrangle over the statutory definitions of these terms. They agree that § 32:23–6 of the act defines

- ◆ "longshoremen" as persons "employed for work at a pier or other waterfront terminal ... by a carrier of freight by water.. physically to move waterborne freight on vessels berthed at piers, on piers or at other waterfront terminals;"

- ◆ "pier superintendents" as persons "employed for work at a pier or other waterfront terminal by a carrier of freight by water ... whose work at such pier or other waterfront terminal includes the supervision, directly or indirectly, of the work of longshoremen;" and

- ◆ "hiring agents" as persons "who on behalf of a carrier of freight by water ... shall select any longshoreman for employment"

*id.*, and defendant does not deny that its employees were engaged in the activities described "at a pier or other waterfront terminal" within the Commission's jurisdiction. EMS does, however, contend that because it only moved goods to which it held title, it was not a "carrier of freight by water" and could therefore employ unregistered longshoremen and unlicensed hiring agents and pier super-

intendents. Plaintiff contests this construction of the statute and labors to convince the Court that a more inclusive definition is appropriate.[3]

While both sides dispatch interesting arguments to buoy their positions, that they have each dropped anchor in this section of the Act manifests an apparent inability to navigate the statute. This has left all passengers to this voyage marooned on an irrelevant point. Notwithstanding the parties' invitation, the Court does not embark on this cruise to nowhere.

Submerged in both parties' briefs are references to Section 32:23–85 of the Compact. This provision, "supplementary definitions," provides, *inter alia,* that:

> (6) "Longshoreman" shall also include a natural person ... who is employed for work at a pier or other waterfront terminal ...
>
> > (c) by *any person* to perform labor or services involving, or incidental to, the movement of freight at a waterfront terminal ...
>
> \* \* \* \* \* \*
>
> (9) "Hiring agent" shall also include any natural person, who on behalf of *any other person* shall select any longshoreman for employment.

(emphasis added.)

Although the section also states somewhat circularly that " 'freight' means freight which has been or will be, carried by or consigned for carriage by a carrier of freight by water," *id.,* the New Jersey Supreme Court, like a lighthouse shining its beacon through mist and fog, illuminated that "the 1969 amendments eliminated from the definition of longshoreman [and hiring agent] the requirement that a person be employed by a carrier of freight by water...." *Waterfront Commission of New York Harbor v. Mercedes–Benz*

---

**2.** For a detailed discussion of the Commission's history, duties and powers, *see Waterfront Commission of New York Harbor v. Construction & Marine Equip. Co., Inc.,* 928 F.Supp. 1388 (D.N.J.1996).

**3.** At § 32:23–6, the Compact defines a "carrier of freight by water" as:

> Any person who may be engaged or who may hold himself out as willing to be engaged, whether as a common carrier, as a contract carrier or otherwise ... in the carriage of freight by water between any point in the Port of New York district and a point outside said district.

*of North America Inc.,* 99 N.J. 402, 493 A.2d 504 (1985). Plaintiff should have seen this and cried "Land Ho!"

Indeed, while this declaration of the effect of the amendments is sufficient to sink defendant's position, it is just the tip of the iceberg. *Mercedes–Benz* continues that "[t]he 1969 amendments expressly eliminate the nature of the employer as a controlling element in defining 'longshoreman,' [and 'hiring agent'] and emphasize the character and location of the work being performed. The amendments deleted the requirement that [these classes of workers] be employed 'by a carrier of freight by water'... and substituted the requirement that [they] be employed 'by any person.'" *Id.* at 415, 493 A.2d 504.

 Although the amendment does not explicitly redefine "pier superintendent," the Court finds that that vocation is now subsumed by the updated definition of "longshoreman." Clearly, one whose work "includes the supervision, directly or indirectly, of the work of longshoreman," N.J.S.A. 32:23–6, is performing "labor or services involving, or incidental to, the movement of freight at a waterfront terminal." N.J.S.A. 32:23–85. This reading of the statutory provision is both rational and in line with the legislative purpose of the amendments that the Commission's reach not be eroded. *See generally id.* at 409–414, 493 A.2d 504.

 Accordingly, defendant's efforts to avoid the requirements of the Act are dead in the water—not torpedoed by the arguments launched by the plaintiff, but capsized in the wake of *Mercedes–Benz.* Defendant is hereby permanently enjoined from employing unregistered longshoremen and unlicensed hiring agents and pier superintendents to handle waterborne freight at any waterfront facility within the jurisdiction of the Commission.

## II. Penalties and Assessments

### a. Penalties

The Commission complains of two separate incidents when ENS employed unregistered or unlicensed laborers to load its ships. Section 32:23–89 of the Act provides that the Commission may

recover a judgment for a money penalty not exceeding $500.00 for each and every [violation of any provision of the compact.] Every violation of any such provision, order or direction shall be a separate and distinct offense, and, in case of a continuing violation, every day's continuance shall be and be deemed to be a separate and distinct offense.

Because the Commission does not know how many days it took to load each vessel, it seeks the minimum penalty of $1000.00 for defendant's two violations. The Court grants this request.

### b. Past Assessments, Penalties and Interest

Under the provisions of the Compact, the Commission is entitled to an assessment of up to 2% of gross payroll payments made by employers of properly licensed and registered persons. N.J.S.A. 32:23–58. In addition, the Compact allows that

When any person shall willfully fail to pay any assessment due hereunder he shall be assessed interest at a rate of one per centum (1%) per month on the amount due and unpaid and penalties of five per centum (5%) of the amount due for each thirty days or part thereof that the assessment remains unpaid. The commission may, for good cause shown, abate all or part of such penalty.

N.J.S.A. 32:23–74(8). Defendant admits that on the two occasions between June 21, 1997 and September 6, 1997 of which plaintiff herein complains, it employed a total of eight people to handle its freight. ENS paid these workers a total of $1750.00. Accordingly, plaintiff seeks $60 in assessments and interest. This request is granted.

### c. Disbursements

Finally, the Commission seeks to recover various disbursements it made in pursuit of this action. Fed.R.Civ.P. 54(d)(1) directs that "costs other than attorney's fees shall be allowed as of course to the prevailing party unless the court otherwise directs." Here, plaintiff seeks an award of $2,500 for each of two injunction bonds it has had to post, and the $120.00 filing fee for this action—a total

of $5,120.00. The Court finds this request to be reasonable.

### Conclusion

For the foregoing reasons, plaintiff's motion for summary judgment is *granted.* Defendant is hereby permanently enjoined from employing unregistered longshoremen and unlicensed hiring agents or pier superintendents to handle waterborne freight within the Port of New York District. Defendant is also ordered to make payment to plaintiff in the amount of $6,180.00 in penalties, assessments and costs.

### ORDER

This matter comes before the Court upon plaintiff's motion for summary judgment. Upon review of the submissions of the parties and for good cause shown, it is on this 24th day of April, 1998,

***Ordered*** that plaintiff's motion is ***granted;*** AND

Defendant is permanently enjoined from employing unregistered longshoremen or unlicensed hiring agents or pier superintendents to handle waterborne freight within the Port of New York District; AND

Defendant is ordered to pay $6,180.00 in penalties, assessments and costs to plaintiff.